Nancy G. Ross (*Pro Hac Vice*)
nross@mwe.com
John A. Litwinski (*Pro Hac Vice*)
jlitwinski@mwe.com
McDERMOTT WILL & EMERY LLP
227 West Monroe Street
Chicago, IL 60606-5096
Telephone: 312.372.2000
Facsimile: 312.984.7700

Chris C. Scheithauer (State Bar No. 184798)
cscheithauer@mwe.com
McDERMOTT WILL & EMERY LLP
18191 Von Karman Avenue, Suite 500
Irvine, CA 92612-7108
Telephone: 949.851.0633
Facsimile: 949.851.9348

Attorneys for Defendants

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES D. SKINNER and GREGORY A. STRATTON, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NORTHROP GRUMMAN RETIREMENT PLAN B; and ADMINISTRATIVE COMMITTEE OF NORTHROP GRUMMAN RETIREMENT PLAN B,<br><br>Defendants. | Case No. CV 07-3923-JFW (JTLx)<br><br>SUPPLEMENTAL DECLARATION OF MARIA NORMAN IN OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT<br><br>DATE: February 11, 2008<br>TIME: 1:30 p.m.<br>COURTROOM: 16<br><br>[Courtroom of the Honorable John F. Walter]<br><br>Pre-Trial Date: May 23, 2008<br>Trial Date: June 3, 2008 |

# SUPPLEMENTAL DECLARATION OF MARIA NORMAN

I, Maria Norman, hereby declare and state as follows:

1. I am Corporate Director Benefits Strategy & Design with Northrop Grumman Corporation ("Northrop") in Los Angeles, California. I have been employed in this position since April 2000. My job responsibilities include oversight of employee benefit plan documents and communications with respect to the employee benefit plans sponsored by Northrop Grumman and its related entities (including the employee benefit plans inherited from the various entities acquired by Northrop). If called upon as a witness, I could and would competently testify to the facts set forth below, as I know each to be true based on my own personal knowledge or based upon my review of the files and records maintained by myself in the regular course of my duties for oversight of Northrop's benefits programs.

2. This Supplemental Declaration is made in response to items raised in plaintiffs' cross-motion for summary judgment. This Supplemental Declaration is intended to supplement my prior declaration that I submitted in support of defendants' own motion for summary judgment ("MSJ Declaration"). Many of the documents I refer to in this Supplemental Declaration were attached to my prior MSJ Declaration and are incorporated herein by this reference.

3. After Northrop acquired Litton Industries, Inc. ("Litton") in 2001, Northrop restated the Litton Industries, Inc. Retirement Plan B ("Litton Plan B"), effective January 1, 2002 ("2002 Litton Plan B"). A copy of the 2002 Litton Plan B, with subsequent amendments, was attached as Exhibit 2 to my MSJ Declaration. No substantive changes pertinent to this lawsuit were made to the historical Litton Plan B when it was originally restated in 2002. Pursuant to the Fourth Amendment to the 2002 Litton Plan B, which amendment was effective November 30, 2002, and not material to the issues in this lawsuit, the 2002 Litton Plan B was amended to spin off certain assets and liabilities and merge them into to Ingalls Shipbuilding Pension Plan for purposes of funding only. The underlying different benefit

provisions remained the same and were not combined. Pursuant to the Fifth Amendment to 2002 Litton Plan B, which amendment was adopted on December 18, 2002, the Litton Plan B was renamed the Northrop Grumman Retirement Plan B. Additional spin-offs and mergers into the Northrop Grumman Retirement Plan B, none of which are material to the issues in this lawsuit, also occurred for funding purposes only.

4. As a result of myriad corporate acquisitions, of which Litton was one, Northrop had inherited a large number of retirement plans with different benefit structures. Northrop felt it was administratively optimal to consolidate all the plans into a single, uniform benefit platform. Accordingly, Northrop designed a new retirement benefit plan with a cash balance formula, effective July 1, 2003 and transferred the majority of employees to that formula. However, because Northrop is a government contractor, it is subject to certain cost accounting rules that made it difficult for Northrop to combine all its Northrop-sponsored pension plans into one cash balance plan effective July 1, 2003, as it would have preferred to do. Accordingly, Northrop maintained different pension plans for different sectors of employees, even though most of them were transitioning to the same cash balance formula. Moreover, each different pension plan document also had to contain rules as to what happens when a participant transfers within the company to a different business unit that may be part of a different cash balance pension plan. Therefore, each plan contains references and provisions for all transfers, rehires, definitions, and other such items even though they may not be directly applicable to each employee in a specific situation or participating in a particular plan.

5. The 2002 Litton Plan B was amended and restated, effective July 1, 2003, as the Northrop Grumman Retirement Plan "B" (2003 Northrop Plan B). A copy of the 2003 Northrop Plan B was attached as Exhibit 5 to my MSJ Declaration. Plaintiffs Skinner and Stratton are participants in the 2003 Northrop Plan B and it is the pension plan at issue in this lawsuit.

1  6. The 2003 Northrop Plan B uses a formula to determine a participant's pension that equates to the following:

**(a) + [the greater of (b) or (c)] + (d) = pension,**

where (a), (b), (c) and (d) are defined as follows:

 (a) the benefit the participant had earned under the Litton Plan B through June 30, 2003 ("Part A" benefit);

 (b) a formula which approximates the benefit the participant would have earned under the Litton Plan B from July 1, 2003 to June 30, 2008 ("Part B" benefit)

 (c) the amount participant earns under the cash balance formula from July 1, 2003 to June 30, 2008 ("Part C" benefit);

 (d) the amount the participant earns under the cash balance formula from July 1, 2008 until retirement ("Part D" benefit).

The (b) and (c) portions of the formula represent the "transition benefit" designed to provide participants with benefits for a five-year period constituting the "greater of" what they would have received under either the Litton Plan B or the new cash balance formula.

7. Section 2.01 ("Accrued Benefits") of the Northrop Plan B, p. 4, provides that generally a participant's accrued pension benefit is the sum of the following:

 1. "The Participant's Predecessor Plan Accrued Benefit, if any." (the Part A benefit). This refers to the 2002 Litton Plan B.

 2. The Participant's Transition Period Accrued Benefit, if any (the Part B and Part C benefit). Section 2.01(a)(2) explicitly states to **"See Appendix H"** for how to calculate this provision (emphasis added).

 3. The Participant's Cash Balance Benefit (Part D benefit).

Accordingly, Appendix H to the 2003 Northrop Plan B governs the calculation of

benefits under Part B and C of the transition formula. Appendix H Section H3.02 ("Cash Balance Benefit") explains how to determine the Part C part of the transition formula (i.e., what the participant earns under the new cash balance formula) and refers the participant back to Section 7.01(c)(2)(A) and Section 2.01(a)(3) of the 2003 Northrop Plan B. Section 2.01(a)(3) entitled "The Participant's Projected Cash Balance Benefit" has nothing to do with determining the Part B transition benefit. Appendix H Section H3.03 ("Historical Transition Benefit") sets forth the formula for determining the Part B transition benefit.

8. The Second Amendment to the 2003 Northrop Plan B made certain amendments to Section 2.01. The amendments to Section 2.01(e) and Section 2.01(f) do not impact the Part B transition benefit. The amendment to Section 2.01(e) dealt with how to determine the Part A benefit for Synoptics Transition Participants – which do not involve plaintiffs here. Section 2.01(f) dealt with an amendment to the cash balance calculations of 2.01(a)(3).

9. Section H1.01 of the 2003 Northrop Plan B sets forth the Eligibility for the benefits described in Appendix H and states that it applies to "Employees of the Plan Assignment Units who were active as of June 30, 2003 and who became Participants in the Plan as of July 1, 2003" ("RPB Transition Participants").

10. Exhibit A to the 2003 Northrop Plan B, beginning on page 164 of the plan document, contains a list of "Participating Business Units and Covered Employees." This is a master list of business units participating in the various new cash balance plans. This list is not specific to the Northrop Plan B (i.e., the other cash balance pension plans restated in 2003 have a similar exhibit). The plan assignment (i.e., which pension plan a participant is assigned to) is set forth in Exhibit A to the 2003 Northrop Plan B. For example, the first pension plan listed on that Exhibit A is the Northrop Grumman Pension Plan (see p. 164 of the plan). Exhibit A then lists the 19 business units assigned to that plan. Those business units do not participate in the Northrop Plan B. The business unit assignment

relevant to this lawsuit is found on Exhibit A of the 2003 Northrop Plan B at page 176, under the heading "Northrop Grumman Retirement Plan 'B' – Plan Assignment Units." That is a section that identifies business units participating in the Northrop Plan B. Thereafter that section lists 8 business units that were formerly part of Litton, including the ES reporting sector to which both plaintiffs Stratton and Skinner belonged. The proper Plan Assignment Units and Covered Employees are repeated at Exhibit C to the 2003 Northrop Plan B, which also show 8 former Litton business units, including plaintiffs', and that they are covered by the Northrop Plan B.

11. Article 7 of the 2003 Northrop Plan B does not apply to the Part B transition formula. It provides certain procedures and accrual tables for the cash balance formula, including the Part C transition cash balance formula, as well as certain Part D cash balance accrual information, neither of which are at issue in this lawsuit. Section 7.02 of the 2003 Northrop Plan provides two accrual formulas for the cash balance plan (not Part B) depending on when a participant was hired and from which historical plan they came from. This was form language for the cash balance formula that was included in a multitude of plans and, therefore, some of it is not applicable to plaintiffs here. For example, Section 7.02(a)(1) identifies which participants are eligible for the standard cash balance benefits credits calculation – which would include the plaintiffs here because they were employees before July 1, 2003 and were participants in the historical Litton Plan B. Section 7.02(a)(2) provides an alternative cash balance benefits credits calculation for certain other employees – none of which apply here. The important point here relevant to this lawsuit is that Section 7 has nothing to do with the Part B transition benefit – it only concerns the Part C and Part D cash balance benefit.

12. The 2003 Northrop Plan B contained certain scrivener's errors. Section 2.47 and 2.52 define the "Plan" and "Predecessor Plan" as The Avondale Industries, Inc. Non-Represented Employees' Pension Plan. Because a prototype

1 plan was used for drafting the cash balance portion of the restated plan and other
2 similar cash balance plans, these sections were inadvertently not revised. Section
3 1.01 properly defines the "Plan" as the "Northrop Grumman Retirement Plan "B".
4 Additionally, Section 1.05(b) of the 2003 Northrop Plan B sets forth the "History"
5 of the Plan demonstrating that the historical plan was the Litton Industries, Inc.
6 Retirement Plan "B" and the various changes until it became the restated 2003
7 Northrop Plan B.

        13. In June 2003, the Director of Benefits Administration and Services sent a correspondence to participants concerning the upcoming changes to the benefit plans ("June 2003 Letter"). The June 2003 Letter was attached as Exhibit 9 to my MSJ Declaration. The June 2003 Letter provided some background on the cash balance change, the transition benefit, and other items. Under the section "Pension Benefits" the June 2003 Letter highlighted the change to a cash balance formula and stated, among other things: "Each month, you receive a pay-based credit that takes into consideration your eligible pay, age, years of service, sector, and date of hire. Your benefit also grows with monthly interest credits…" That section was describing the cash balance formula – it was not describing Part B transition benefit. The portion of the June 2003 Letter that described the Part B formula was stated in the second paragraph of the letter where it referenced receiving a transition benefit that was,

> based on a formula that approximates the LRP benefit. (For example, the formula that approximates the LRP benefit assumes that you would have contributed at least 4% to the [FSSP plan] during the five-year transition period and that you would have earned a 5% return on your FSSP assets.)

        14. The 2003 Summary Plan Description ("2003 SPD"), attached as Exhibit 10 to my MSJ Declaration, was a summary that notified participants in various different Northrop plans of the conversion to a cash balance plan. The primary change of a cash balance formula was that it uses "pay-based credits" and

"interest credits" in the cash balance formula. In addition to describing the new cash balance formula, the 2003 SPD advised participants that the transition benefit "refers to certain individual historical pension plans, as amended on July 1, 2003" and lists the "Northrop Grumman Retirement Plan B (formerly known as Litton Industries, Inc. Retirement Plan B")" as one of the historical plans to which the SPD refers. The 2005 SPD, which is attached as Exhibit 16 to my MSJ Declaration, contains similar language. The SPDs informed participants of the assumptions that would be used for the historical plan for purposes of calculating the Part B transition benefit. They explain that the transition benefit will be the greater of **"your accrued benefit under your historical plan** (as of June 30) from July 1, 2003 through June 30, 2008" (Part B transition benefit) or "your accrued benefit under the Northrop Grumman Pension Plan (effective July 1, 2003) from July 1, 2003 through June 30, 2008" (Part C transition benefit based on new cash balance plan). As to the Part B transition benefit, the SPDs announce the adjustments made to the historical formula, i.e., deemed 4% annual contributions credited with 5% interest. For a reminder of the other components of the historical formula, the SPDs refer participants to the Litton Plan B SPDs.

15.   In describing the new cash balance pension formula, the 2003 SPD advised participants on page D00003471 under the heading "How Much It Costs" that "Northrop Grumman pays the full cost of the Pension Plan – it costs you nothing to participate. All contributions are held in a trust for your benefit." That provision refers to the new cash balance formula – it does not refer to the historical Part B formula calculation.

16.   I have reviewed the April 21, 2005 pension calculation packet received by Skinner (attached as Exhibit 21 to my MSJ Declaration), as well as the May 4, 2006 pension calculation packet received by Stratton (attached as Exhibit 25 to my MSJ Declaration). I understand that Skinner and Stratton are claiming in this lawsuit that they were never given credit for the 4% imputed deposits plus 5%

1  interest. However, a review of the pension calculation packets described above
2  demonstrates otherwise. For example, page 53 of Skinner's April 21, 2005 packet
3  (also numbered D00002709) shows that for his Part B calculation he was given
4  credit for imputed deposits of $8,309.96 from July 1, 2003 through May 31, 2005
5  (4% of his Eligible Earnings), which was then multiplied by 60% to obtain to
6  $4,985.97. As required by the Northrop Plan B, that amount was then reduced by
7  the annuity equivalent of the product of the imputed deposits plus 5% interest,
8  which deduction was $1,172.15, leaving a Part B benefit of $3,813.82 per year
9  ($317.82 per month). Skinners' Part C benefit calculation was less than the Part B
10 calculation and, therefore the Part B calculation prevailed in the "greater of"
11 calculation, as evidenced by page D00002710 of that pension packet which notes:
12 "Your Part B transition benefit is greater than your C transition benefit - $317.82
13 vs. $196.54." That Part B amount (representing the pension earned for the period
14 of July 1, 2003 through May 31, 2005) was then added to his Part A benefit for the
15 total pension amount. Stratton's retirement packet at p. 49, also numbered
16 D00004183, shows how his Part B benefit was calculated and reflects that he was
17 given credit for 4% imputed deposits and that a 5% interest was assumed in the
18 calculation.

19         I declare under penalty of perjury under the laws of the United States
20 of America and the State of California that the foregoing is true and correct. This
21 declaration was executed on January 27, 2008 in Los Angeles, California.

Maria Norman
Corporate Director Benefits Strategy & Design
Northrop Grumman Corporation

ORC 431722-3.071494.0015