Jay Smith (California Bar No. 166105)
Joshua F. Young (California Bar No. 232995)
**GILBERT & SACKMAN A LAW CORPORATION**
3699 Wilshire Boulevard, Suite 1200
Los Angeles, California  90010
Telephone:   (323) 938-3000
Fax:              (323) 937-9139
Email:           js@gslaw.org; jyoung@gslaw.org

William T. Payne (California Bar No. 90988)
**STEMBER FEINSTEIN DOYLE & PAYNE, LLC**
*Pittsburgh North Office*
1007 Mt. Royal Blvd.
Pittsburgh, PA  15223
Telephone:   (412) 492-8797
Email:           wpayne@stargate.net

Ellen Doyle (*Pro Hac Vice*)
Pamina Ewing (*Pro Hac Vice*)
**STEMBER FEINSTEIN DOYLE & PAYNE, LLC**
1705 Allegheny Building
429 Forbes Avenue
Pittsburgh, PA  15219
Telephone:   (412) 281-8400
Email:           edoyle@stemberfeinstein.com, pewing@stemberfeinstein.com

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES D. SKINNER and GREGORY A. STRATTON, on behalf of themselves and all others similarly situated,<br><br>                  Plaintiffs,<br><br>  v.<br><br>NORTHROP GRUMMAN RETIREMENT PLAN B; and ADMINISTRATIVE COMMITTEE OF NORTHROP GRUMMAN RETIREMENT PLAN B,<br><br>                  Defendants. | Case No. 07-CV-3923 (JTLx)<br><br>**EXCERPTS OF DEPOSITION OF MARIA TERRAZAS NORMAN AND CHARLES D. SKINNER IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>The Hon. John F. Walter<br><br>Date:     February 11, 2008<br>Time:    1:30 p.m.<br>Place:    Courtroom 16<br>             Spring Street<br>             Courthouse<br>Judge:   Hon. John F. Walter |

1  Pursuant to Section 3(b) of this Court's October 17, 2007, Scheduling and
2  Case Management Order, Plaintiffs Charles D. Skinner and Gregory A. Stratton
3  respectfully submit the following questions, answers, and objections regarding
4  relevant deposition testimony of Maria Terrazas Norman and Charles D. Skinner in
5  support of their opposition to Defendants' motion for summary judgment:

**Deposition of Maria Terrazas Norman**

**Norman Deposition at 126:8-17**

Q   Was Plan B administered so that the language of the Plan governed in the event of a conflict between the 2003 SPD and Exhibit 8?
A   Was it administered according to the Plan document if there was a conflict?
Q   Yes.
A   Is that the question?  I'm not aware of any conflict, but it would have been had there been.
Q   Did Mr. Stratton complain of a conflict?
A   Yes, he did.

**Norman Deposition at 109:21-110:13**

Q   BY MS. DOYLE : I want to repeat the question I had asked you earlier.  Does the recommendation made by the benefits administration to the subcommittee of the Administrative Committee address the summary plan description in effect as of July 1, 2003?
MS. ROSS:  Objection.  Same objection.
THE WITNESS:  It references plan communications.  It does not mention SPD specifically.

1  Q  BY MS. DOYLE: And the SPD was not in the documents provided by benefits administration to the subcommittee of the Administrative Committee.

MS. ROSS: Objection. Calls for speculation. You can answer if you know.

THE WITNESS: I don't personally know.

Q  BY MS. DOYLE: Is it reflected in the documents that you have --

A  It is not reflected in the documents, no.

**Norman Deposition at 115:9-116:10**

Q  And looking back now at the administrative appeal documents, which were Plaintiffs' Exhibit 22, can you show me where in the administrative record the committee looked at Section H3.03 of the Plan document?

MS. ROSS: What's the Bates stamp of Exhibit 22?

MS. DOYLE: What's the Bates stamp?

MS. ROSS: Yes.

MS. DOYLE: You mean where in it is the Plan document?

MS. ROSS: No. What is the Bates stamp of the entire document? What's the first Bates stamp?

MS. DOYLE: D3261.

THE WITNESS: And you wanted to specifically know where the committee reviewed that?

Q  BY MS. DOYLE: Section H3.03 first.

A  It does not appear to be in here. I don't know if they did not include it.

Q  And by "in here," you mean it's not in Plaintiffs' --

A  Not in the --

Q  -- Exhibit 22.

A  That's correct.

Q  Would you tell me where in Exhibit 22 there is Section H2.05 of the Plan?

3

EXCERPTS OF DEPOSITION OF MARIA TERRAZAS NORMAN AND CHARLES D. SKINNER

1   A  Again the same thing. Section H appears to be missing.

2

3   **Norman Deposition at 20:3-9**

4   Q  Do you participate in any management incentive for bonus programs?

5   A  Do I? Yes, I do.

6   Q  And are those programs also available to members of the Administrative

7      Committee, if you know?

8   A  Most of them, yes, would be participants in those programs.

9

10  **Norman Deposition at 20:21-21:2**

11  Q  Okay. One of the documents that we have seen talks about the Northrop

12     Grumman pension program. Is that a phrase that is used at Northrop Grumman to

13     describe a set of pension plans?

14  A  It's used as sort of reference to our umbrella of all of the various pension plans

15     that the company sponsors.

16

17  **Norman Deposition at 35:24-36:2**

18  Q  Now, what is the Northrop Grumman pension plan?

19  A  That's the main umbrella program. It's the main pension plan that we offer.

20

21  **Norman Deposition at 55:24-56:11**

22  Q  BY MS. DOYLE: So the July 2005 PDF version says that it's for the Northrop

23     Grumman pension program rather than for the Northrop Grumman pension plan.

24  A  Yes.

25  Q  Do you know as of what date that change was made?

26  A  It has always been referred to as the Northrop Grumman pension program or plan.

27     We use those terms interchangeably, and in fact, if you look at note -- the

28

4

EXCERPTS OF DEPOSITION OF MARIA TERRAZAS NORMAN AND CHARLES D. SKINNER

information that says "Note," it refers to it as Northrop Grumman pension program right below the title on Exhibit 11.

**Norman Deposition at 60:3-12**

Q  Do the SPDs for the historical plan say that your benefits will be calculated as if you had contributed 4 percent annually?

A  No.

Q  Do they say that those contributions which were calculated as if you had contributed 4 percent annually will be credited with a 5 percent annual rate of return until you end your employment with the company?

A  No.

**Norman Deposition at 123:19-125:15**

Q  Are you familiar with the standard definitions and procedures for certain Northrop Grumman retirement plans?

MS. ROSS:  Objection.  Cumulative.

THE WITNESS:  I'm not quite sure what you're referring to.

Q  BY MS. DOYLE:  Then let's look at Exhibit 8.  That's page 762.  In Section 2.47 there is reference to standard definitions and procedures for certain Northrop Grumman retirement plans.

A  Oh, okay.  I think I know what that is, yes.  What we did was we standardized -- I wasn't recognizing it as that -- we standardized certain things for all the benefit programs.  For example, a common definition of pay and things like that.

Q  Where are those common definitions and procedures, where were they maintained?

A  I saw them somewhere in here so now I have to find them, all the various documents we looked at.

EXCERPTS OF DEPOSITION OF MARIA TERRAZAS NORMAN AND CHARLES D. SKINNER

1     (Pause for review of document.)

2     I'm not sure I'm looking at the right thing.

3 Q What are you looking at? I'm sorry.

4 A I was looking for one of the documents just to see where -- as I said, as we were
5     going through things, I thought I had seen it, but I'm not finding it now.

6 Q Also in Exhibit 8 at page D811, there is a paragraph in this third amendment to
7     Plan B that states, "Sections 15.16, Claims Procedures. The claims procedures for
8     the Plan are provided in Article 6 of the Standard Definitions and Procedures for
9     certain Northrop Grumman Corporation retirement plans which article is
10     incorporated herein by reference." Are you familiar with Article 6 of the standard
11     definitions and procedures for certain Northrop Grumman Corporation retirement
12     plans?

13 A As I said, I'm familiar with it. I was looking for that document, and I haven't
14     found it. It's usually attached as part of those --

15 Q It's usually attached what?

16 A As part of the documents, so I think it just wasn't included in here.

17 MS. DOYLE: I would ask that the defendants produce that document.

18 MS. ROSS: If the document exists, we'll produce it. Send me a request, though.

19

20 **Norman Deposition at 11:6-12**

21 Q Who administers Plan B?

22 A Well, it's administered through benefits administration department at Northrop
23     Grumman utilizing an outside record keeper and administrator.

24 Q Where are those people located, benefits administration people?

25 A They're here in Los Angeles, Century City.

26

27 **Norman Deposition at 46:7-14**

28

6

EXCERPTS OF DEPOSITION OF MARIA TERRAZAS NORMAN AND CHARLES D. SKINNER

1  Q  BY MS. DOYLE:  And are there any rules, guidelines, protocols or other
2     guidance about how they carry out their duties in construing and interpreting
3     terms of the Plan?
4  MS. ROSS:  Objection.  Compound question.
5  THE WITNESS:  It's based on the specific issue at hand, so I can't generalize.  Are
6     there written guidelines?  Not that I'm aware of.

**Norman Deposition at 47:22-48:4**

Q  BY MS. DOYLE:  Well, you said not that you're aware of.  You were designated to testify on that subject.  I'm trying to find out how do you know that there aren't any?  You say you weren't aware of any.  Did you talk to anybody to find out if such guidance existed?
A  In my attendance at the committee, I have never seen anything of that nature.

**Norman Deposition at 88:17-24**

Q  And is there some kind of telephone line that participants are directed to call if --
A  They're directed to call the Northrop Grumman Benefits Center which is an 800 number.
Q  And that Benefits Center is staffed by Towers Perrin?
A  It was at this time staffed by EDS Towers Perrin.

**Norman Deposition at 89:3-91:1**

Q  On the last page of the document, page D4109, there are notes that say on "August 24th, 2005, PP" -- does that refer --
A  Plan participant.

7
EXCERPTS OF DEPOSITION OF MARIA TERRAZAS NORMAN AND CHARLES D. SKINNER

1  Q  -- "called to verify receipt of a letter that he sent to the L.A. office appealing the
2     way his pension was calculated so no record of PP's letter."  Did you do any
3     inquiry into whether there was any record of the participant's --
4  MS. ROSS:  Does it state that, "so no record"?  Where are you reading?
5  MS. DOYLE:  The top of page D4109.
6  MS. ROSS:  Okay.
7  Q  BY MS. DOYLE:  Do you know whether there was a participant letter sent?
8  A  There was no record of having received it at that time.
9  Q  And then if you look at the page before that -- looking still at 4109 it says, "PP
10    says his calculation was in violation of the SPD."
11 A  Um-hum.
12 Q  Now, these are all notes within Towers Perrin?
13 A  Yes.
14 Q  Okay, and then if you look at page D4025, the beginning of the package, second
15    page, does the package refer to a letter from Mr. Skinner to the Administrative
16    Committee?
17 A  Yes, it does.
18 Q  Dated May 12, 2005?
19 A  Yes, it is.
20 Q  And that says, "I'm filing this appeal under rights granted to me under ERISA"?
21 MS. ROSS:  We'll stipulate that the letter says what it says.
22 Q  BY MS. DOYLE:  And will you agree that issue 1 in his letter is that the Part B
23    transition benefit provided upon retirement is not in accordance with the summary
24    plan description?
25 MS. ROSS:  Again, we'll stipulate that the letter says what it says.
26 Q  BY MS. DOYLE:  Okay. And then there is a second letter from Mr. Skinner at
27    page D4030, it's a letter from Mr. Skinner also and that was also in the record that
28

8

EXCERPTS OF DEPOSITION OF MARIA TERRAZAS NORMAN AND CHARLES D. SKINNER

1  you reviewed. What was the disposition of Mr. Skinner's appeal to the
2  Administrative Committee?
3  A  We have not been able to determine what happened to this.

**Norman Deposition at 93:22-94:2**

Q  A letter from Charles Skinner dated May 12, 2005, Bates stamped D3096 to 3099. Does this Exhibit 19A reflect that the benefits administration service department received Mr. Skinner's letter on May 18, 2005?

A  That's what it stated in the stamp.

**Norman Deposition at 97:20-98:16**

Q  Do you know who "Corp" refers to?

A  Corporate Benefits Administration.

Q  And then down at the bottom of that same 2-15-2005 note is an item, "This is going to the corp office, and Lisa S is inquiring about the e-mail that Andrea McKee sent to Dennis Wooten." Did your review of what happened to Mr. Stratton during the administration of his concerns find any communications with corporate about the problems he raised?

A  I did not review any e-mails, no.

Q  And then there's a note 2-28-2005, "CASE UPDATE," "No correspondence from corp. Closing case." Are you familiar with whether that was the process used in the administration of a plan, that if there wasn't a response from corporate benefits that they closed the case?

A  I'm not familiar with that, no.

Q  Do you know who would be?

A  The benefits administration department, somebody in there perhaps.

**Norman Deposition at 98:21-25**

Q  I'm going to ask you to look at Exhibit 22, which is Bates stamped D3261 through D3464.  Are you able to identify that document?

A  This would be the material that was put together for the review of Mr. Stratton's appeal to the Benefits Administration Subcommittee.

**Norman Deposition at 17:22-18:7**

Q  Do you know whether the general responsibility for the administration of Plan B rests with the Administrative Committee?

MS. ROSS:  Objection.  Form.

Q  BY MS. DOYLE:  And I will use Administrative Committee to mean the Administrative Committee of Northrop Grumman Retirement Plan B.

A  Are they the administrator?  Is that the question?

Q  Yes.

A  Yes, they are the formal administrator.

**Norman Deposition at 121:4-23**

Q  Was there any Section 204(h) notice sent out before the material modifications were made to the Plan B?

A  The 204(h) notice was made in 2003 at the time of the effect of these changes.

Q  And that 204(h) notice covered all of the material modifications that were the subject of the December 2005 summary of material modifications?

A  As it related to those benefits that transitioned on July 1st, 2003, so for purposes of the January 1st, 2004, and January 1st, 2005, plans that were transferring, they would have transitioned, they would have had a different 204(h) notice sent prior to that.

Q  Just to repeat, then, the benefit formula for Part B benefit that is the subject of the material modification December of 2005, it's your understanding that that was the subject of the 2003 204(h) notice.

A  Yes.

**Norman Deposition at 52:14-21**

Q  BY MS. DOYLE:  Prior to Mr. Stratton's appeal, how was the transition benefit construed and interpreted?

A  By whom?

Q  In the administration of Plan B.

A  It has been construed or administered in the same way since it was originally designed and implemented.

**Norman Deposition at 12:6-9**

Q  Who administers Plan B?

A  Well, it's administered through benefits administration department at Northrop Grumman utilizing an outside record keeper and administrator.

**Norman Deposition at 13:4-8**

Q  And then who is involved in the day-to-day administration of Plan B?

A  The actual people?

Q  Well, I think you talked about a department?

A  Right.  Benefits administration department.

**Norman Deposition at 22:22-23:23**

Q  If you look at Exhibit 1, is there any subject on which you are not prepared to testify here today?

EXCERPTS OF DEPOSITION OF MARIA TERRAZAS NORMAN AND CHARLES D. SKINNER

1  MS. ROSS: Take your time. Feel free to read through it.
2  THE WITNESS: Sure.
3  MS. ROSS: And that would be subject to our objections I presume?
4  MS. DOYLE: Well, I think that -- do you want to make your objections a matter of
5      record in the deposition?
6  MS. ROSS: Well, our objections are served -- have been served timely. I think that's
7      sufficient, but they are incorporated into this deposition.
8  (Pause for review of document.)
9  THE WITNESS: What was the question again?
10 Q  BY MS. DOYLE: The question was are there any subjects on which you feel you
11     are not able to testify in Exhibit 1?
12 A  No.
13 Q  And would you look at Exhibit 2, which is the notice of deposition of the
14     Administrative Committee and see if there are any subjects that you feel that you
15     are not able to testify about?
16 MS. ROSS: Why don't we stipulate that the subjects, I believe, are the same.
17 THE WITNESS: Same thing.

**Deposition of Charles D. Skinner**

**Skinner Deposition at 54:13-56:10**

Q.  Do you recall reading in any of the materials that you got that there was a plan document and you as a participant had the legal right to ask to see that plan document?
A.  I think I've seen those, those words, yes.
Q.  Did you ever ask to see the plan document?

EXCERPTS OF DEPOSITION OF MARIA TERRAZAS NORMAN AND CHARLES D. SKINNER

1  A. I don't believe that I have ever -- through -- we have requested those documents,
2     yes.
3  Q. And you're pointing to your attorney. You mean --
4  A. Yes.
5  Q. Through the course of a lawsuit?
6  A. Yes.
7  Q. I'm talking about not as your role as a plaintiff, but while you were a plan
8     participant.
9  A. No. I relied on Summary Plan Description and verbal description to the plan
10    given by company representatives.
11 Q. As you sit here today, have you ever reviewed the governing plan document for
12    the plan B?
13 MR. YOUNG: Objection. It's vague as to governing plan document. You're talking
14    about the master plan document?
15 MS. ROSS: Correct.
16 THE WITNESS: You mentioned the 2-inch document, no, I have not.
17 BY MS. ROSS: Q. All right. So the corollary to that then, the logical corollary is
18    you're not familiar with the terms written that in that plan document; correct?
19 A. I have not seen that document.
20 Q. So before you filed this lawsuit, you made no attempt to review the terms in that
21    document; correct?
22 A. My lawsuit isn't based on that document. My lawsuit is based on the terms of the
23    SPD, which is the document that defines it for employees, so no, I did not
24 review.
25 Q. So your answer to my question is --
26 A. They were never made available to me.
27 Q. But you never asked for them; correct?
28

EXCERPTS OF DEPOSITION OF MARIA TERRAZAS NORMAN AND CHARLES D. SKINNER

1  A.  Did not ask for them. I did not.
2  Q.  Well, with your emphasis on "I did not"?
3  A.  I did not.
4  Q.  Are you implying that somebody else did?
5  A.  Somebody else may have. I did not.
6  Q.  You don't know sitting here today that anybody else asked for it?
7  A.  I do not.

DATED: January 28, 2008              **GILBERT & SACKMAN**
                                     A LAW CORPORATION


                                     By:  s/Joshua F. Young
                                          Attorneys for Plaintiffs

14
EXCERPTS OF DEPOSITION OF MARIA TERRAZAS NORMAN AND CHARLES D. SKINNER