UNITED STATES DISTRICT COURT         **PRIORITY SEND**
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES -- GENERAL</u>

Case No.    **CV 07-3923-JFW (JTLx)**                               Date: January 26, 2010

Title:     Charles D. Skinner, et al. -v- Northrop Grumman Retirement Plan B, et al.

**PRESENT:**

           **HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

           **S. Eagle**                               **None Present**
           **Courtroom Deputy**                     **Court Reporter**

**ATTORNEYS PRESENT FOR PLAINTIFFS:**       **ATTORNEYS PRESENT FOR DEFENDANTS:**
           None                                         None

**PROCEEDINGS (IN CHAMBERS):**    **ORDER GRANTING DEFENDANTS' MOTION AND SECOND CROSS-MOTION FOR SUMMARY JUDGMENT [filed 12/7/09; Docket No. 186];**

                                 **ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT [filed 11/16/09; Docket No. 173]; and**

                                 **ORDER DENYING PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION [filed 9/11/09; Docket No. 143]**

       On November 16, 2009, Plaintiffs Charles D. Skinner and Gregory A. Stratton (collectively, "Plaintiffs") filed a Motion for Partial Summary Judgment. On December 7, 2009, Defendants Northrop Grumman Retirement Plan B and Administrative Committee of Northrop Grumman Retirement Plan B (collectively, "Defendants") filed their Opposition. On December 23, 2009, Plaintiffs filed a Reply. On December 7, 2009, Defendants filed a Motion and Second Cross-Motion for Summary Judgment ("Motion for Summary Judgment"). On December 23, 2009, Plaintiffs filed their Opposition. On January 4, 2010, Defendants filed a Reply. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court found these matters appropriate for submission on the papers without oral argument. These matters were, therefore, removed from the Court's January 11, 2010, hearing calendar and the parties were given advance notice. In addition, on September 11, 2009, Plaintiffs filed a Renewed Motion for Class Certification. On October 2, 2009, Defendants filed their Opposition. On October 19, 2009, Plaintiffs filed a Reply. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court found the matter appropriate for submission on the papers without oral argument. The matter was, therefore,

removed from the Court's October 26, 2009, hearing calendar and the parties were given advance notice. After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

**I.      Factual and Procedural Background**[1]

   **A.      Northrop Plan B**

In 2001, Northrop Grumman Corporation ("Northrop") acquired Litton Industries, Inc. ("Litton").[2] At the time of Northop's acquisition of Litton, Litton sponsored a pension plan for employees known as the Litton Industries, Inc. Retirement Plan B ("Litton Plan B"). As a result of a myriad of corporate acquisitions, of which Litton was one, Northrop inherited several retirement plans with different benefit structures. Northrop decided to consolidate all the plans into a single, uniform plan. Accordingly, the Northrop Grumman Pension Plan, effective July 1, 2003, was redesigned to include all the various retirement plans, and were all transitioned to a cash balance formula. As part of this redesign, participants in Litton Plan B, which became Northrop Plan B, were provided with a five-year transition benefit, from July 1, 2003, to June 30, 2008**.**

The five-year "transition benefit" under the Northrop Plan B accrues pursuant to the following formula: pension = (a) + [the greater of (b) or (c)] + (d). Under the formula, (a) is defined as the benefit the participant had earned under the Litton Plan B through June 30, 2003 ("Part A" benefit); (b) is defined as a formula which approximates the benefit the participant would have earned under Litton Plan B from July 1, 2003 to June 30, 2008 ("Part B" benefit); (c) is defined as the amount the participant earns under the cash balance formula from July 1, 2003, to June 30, 2008 ("Part C" benefit); and (d) is defined as the amount the participant earns under the cash balance formula from July 1, 2008 until retirement ("Part D" benefit). Northrop Plan B expressly left unchanged the accrued vested benefits from the Litton Plan B as of June 30, 2003 (the Part A transition benefit). Part B and Part C of the transition formula in Northrop Plan B represent the "transition benefit," which was designed to provide participants with benefits for a five-year period starting July 1, 2003, constituting the "greater of" what they would have received under either Litton Plan B (Part B) or the new cash balance formula (Part C).

The transition benefit under the Northrop Plan B did not require participants to contribute to the Litton Financial Security and Savings Program ("FSSP") – or any 401(k) – in order to participate. The benefits historically provided by the Litton Plan B had been based on the amount each participant chose to contribute to the FSSP, which was known as the "pay-to-play" feature of the

---

[1] The factual background of this case is well-known to the parties and the Court, and is fully discussed in the Court's March 10, 2008 Order granting Defendants' original motion for summary judgment. Plaintiffs appealed the order granting summary judgment, and, on May 21, 2009, the Ninth Circuit reversed the summary judgment and remanded to this Court. This Court is, once again, presented with a motion by Plaintiffs for class certification and motions by the parties for summary judgment and partial summary judgment. Accordingly, the Court will limit the factual and procedural background to only what is relevant to the present Motions.

[2] Unless otherwise noted, all of the facts discussed are undisputed by the parties. *See*, Plaintiffs' Statement of Genuine Issues of Fact in Response to Defendants' Separate Statement.

plan. Because participants were no longer required to contribute to the FSSP, for purposes of determining the "greater of" portion of the transition benefit, the Northrop Plan B adopted a formula which approximated the formula under the Litton Plan B (*i.e.,* Part B of the transition benefit) by assuming that all participants would have made the maximum level of employee contributions during the transition period (*i.e.,* 4%). At the outset of the transition period commencing on July 1, 2003, Northrop Plan B provided that for purposes of calculating the Part B benefit during the transition period, participants: (1) would be deemed to have contributed 4% of their compensation; and (2) those deemed contributions would be credited with a 5% interest. Section H3.03 of the Northrop Plan B provides the following annual pension transition benefit formula for Part B benefits[3] (*i.e.,* the historical transition benefit):

    1. The greater of:

        A. The product of 2.4% (60% of 4%)[4] of the Participant's Eligible Pay during the Transition Period; or

        B. The product of 85% and 4% of the Participant's Eligible Pay during the Transition Period less 75% of the Participant's estimated annual Social Security benefit

    2. Less the Offset Annuity Equivalent of: the product of 4% and the Participant's Eligible Pay during the Transition Period, increased by 5% interest compounded annually.

In this case, Plaintiffs challenge the calculation of the Part B transition benefit with its annuity equivalent offset.

    **B.**    **Disclosure of the Annuity Equivalent Offset**

The transition benefit, including the annuity equivalent offset, was disclosed in the Northrop 2003 summary plan description ("2003 SPD"), which was made available to participants in early 2003, prior to the effective date of the Northrop Plan B, and provided a summary of the changes to various plans included in the Northrop Grumman Pension Plan. The 2003 SPD also provided an overview of the Part B transition benefit, and directed participants to the SPD for their historical plan (*i.e.*, the Litton Plan B SPD) for the "specific rules and provisions" as to how to calculate the Part B benefit under their prior plan. The 2003 SPD specifically stated that during the transition period, Part B benefits under the Northrop Plan B "will be calculated ***as if*** you had contributed 4% annually . . . [and] will be credited with a 5% annual rate of return . . ." (emphasis added). The 2003 SPD also stated that it was "a summary only and does not contain all the details of all aspects" of the plan. The 2003 SPD directed participants to other sources, including the master plan document and the historical SPDs for additional information which were available online or from the Northrop

---

    [3] Northrop Plan B also provides, as an alternative, a flat dollar minimum benefit for certain employees not affected in this case.

    [4] While Section H3.03 states "2.4% (60% of 40%)" instead of "2.4% (60% of 4%)," this is obviously a typographical error. Clearly, 2.4% is 60% of 4%, and not 60% of 40%.

Benefits Center.

In addition, in May 2003, Northrop sent a notice to all participants pursuant to Section 204(h) of ERISA that disclosed certain changes in a number of the retirement benefit plan formulas effective July 1, 2003.  The Section 204(h) notice stated that under "Prior Benefit Formula" for Litton Plan B, the benefit was "*reduced by the annuity equivalent* of the participant's contributions plus interest . . ." (emphasis added).  After reminding the participants that their "Prior Benefit Formula" in the Litton Plan B contained the annuity offset, the Section 204(h) notice explained that the five-year transition benefit would be the greater of an approximation of each participant's historical plan formula (which, for Litton Plan B, included an annuity offset) and the new cash balance formula:

> For service you perform during the transition period (July 1, 2003 through June 30, 2008), your benefits will be computed using the new cash balance formula and an approximation of your heritage [Litton Plan B] plan formula.  When you retire, your benefits will be based on the greater of these two formulas (not both).

Moreover, in January of 2003, representatives of the Northrop Benefits Center organized and conducted a series of Town Hall meetings for employees affected by the changes to the benefits program.  At the meetings, a PowerPoint presentation was used to describe and highlight the changes to the pension plans, and the 2003 Glossy Overview was distributed to plan participants.  Both Plaintiffs attended a Town Hall meeting in early 2003.  In March 2005, Plaintiffs also reviewed online PowerPoint presentations explaining the terms of Northrop Plan B that had been presented during Town Hall meetings at the Woodland Hills and Salt Lake City work sites.

### C.    Plaintiff Skinner

Plaintiff Skinner retired from Northrop on May 31, 2005.  In June 2004, Plaintiff Skinner received a preliminary pension calculation packet.  The calculations illustrated how Plaintiff Skinner's Part B benefit would be calculated, based on Plaintiff Skinner's salary and service as they existed at the time.  The illustration Skinner received included the annuity offset.  In December 2004, Plaintiff Skinner received an updated preliminary pension calculation packet.  The calculations again illustrated how Plaintiff Skinner's Part B benefit would be calculated, based on Plaintiff Skinner's salary and service as they existed at the time, and included the annuity offset.[5]  In his deposition, Plaintiff Skinner testified that after reviewing the estimates he was provided in December 2004, he understood how Northrop would calculate the transition benefit, including the offset.

Following his review of the December 2004 updated preliminary pension calculations, Plaintiff Skinner called the Northrop Benefits Center and sought and received clarification of his benefit calculations.  Thereafter, he began "advising co-workers of the situation" specifically his claim that Northrop was improperly applying the annuity equivalent offset.  Plaintiff Skinner, along with Plaintiff Stratton, also met in-person with Andrea McKee of the Northrop Benefits Center on February 8, 2005, and they discussed their contention that the application of the annuity equivalent

---

[5]  The numbers used in Plaintiff Skinner's preliminary calculation are slightly different than the final calculation due to factors, such as, but not limited to, additional accrued salary and an interim raise.

offset in the Part B transition benefit was improper. Plaintiff Skinner testified at his deposition that he understood that there was a master plan document that outlined the formula in detail for the Northrop Plan B transition benefit, but he chose not to review it. Plaintiff Skinner also testified at his deposition that he had received the 1988 SPD and 1989 SPD for Litton Plan B.

In April 2005, approximately one month prior to his retirement, Plaintiff Skinner received another updated retirement packet that explained how each part of his pension, including the Part B transition benefit and the annuity equivalent offset, would be calculated based on Plaintiff's Skinner's most current employment data. Plaintiff Skinner chose to retire notwithstanding his objection to Northrop's calculation of his Part B transition benefit. Prior to retiring, Plaintiff Skinner filed an administrative claim with the Administrative Committee of Northrop Plan B, alleging that Defendant had not administered the Plan in accordance with the SPD provisions relating to the calculation of the Part B transition benefit.[6]

### D.   Plaintiff Stratton

Plaintiff Stratton retired on July 31, 2006. On or about February 3, 2005, Plaintiff Stratton received estimated pension calculations based on Plaintiff Stratton's employment data as it existed at that time. In May 2006, prior to his retirement, Plaintiff Stratton received an updated retirement kit that set forth his pension calculation based on his updated employment data.

Plaintiff Stratton testified at his deposition that he reviewed the 2003 SPD and that he received the SPDs for Litton Plan B. Plaintiff Stratton also testified at his deposition that he received and reviewed the December 2005 Summary of Material Modifications ("December 2005 SMM") in March of 2006; that the document clearly explained the application of annuity equivalent offset and he understood exactly how the annuity offset would affect his pension.

In June 2006, prior to his retirement, Plaintiff Stratton submitted an administrative claim to the Administrative Committee of Northrop Plan B, alleging that Defendants had not administered the Plan in accordance with the SPD provisions relating to the calculation of the Part B transition benefit. The Administrative Committee determined that Plaintiff Stratton was not entitled to any additional benefits under the Northrop Plan B, and sent him a March 19, 2007, letter notifying him of its decision.

## II.   Legal Standard

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A party opposing a properly made and supported motion for summary judgment may not rest upon mere denials but must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.

---

[6]   Neither Plaintiff in this case contests the calculation of their Part A transition benefit, and because both Plaintiffs retired before July 1, 2008, the Part D transition benefit does not apply to them.

1989) ("A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data."). In particular, when the non-moving party bears the burden of proving an element essential to its case, that party must make a showing sufficient to establish a genuine issue of material fact with respect to the existence of that element or be subject to summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "An issue of fact is not enough to defeat summary judgment; there must be a genuine issue of material fact, a dispute capable of affecting the outcome of the case." *American International Group, Inc. v. American International Bank*, 926 F.2d 829, 833 (9th Cir. 1991) (Kozinski, dissenting).

An issue is genuine if evidence is produced that would allow a rational trier of fact to reach a verdict in favor of the non-moving party. *Anderson*, 477 U.S. at 248. "This requires evidence, not speculation." *Meade v. Cedarapids, Inc.*, 164 F.3d 1218, 1225 (9th Cir. 1999). The Court must assume the truth of direct evidence set forth by the opposing party. *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 507 (9th Cir. 1992). However, where circumstantial evidence is presented, the Court may consider the plausibility and reasonableness of inferences arising therefrom. *See Anderson*, 477 U.S. at 249-50; *TW Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 631-32 (9th Cir. 1987). Although the party opposing summary judgment is entitled to the benefit of all reasonable inferences, "inferences cannot be drawn from thin air; they must be based on evidence which, if believed, would be sufficient to support a judgment for the nonmoving party." *American International Group*, 926 F.2d at 836-37. In that regard, "a mere 'scintilla' of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'" *Summers v. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997).

## III. Discussion

### A. Defendants Are Entitled to Summary Judgment with Respect to Count I Because Plaintiffs Cannot Demonstrate Reasonable Reliance on The 1998 SPD.

In Count I of the First Amended Complaint ("FAC"), Plaintiffs allege that Defendants "breached the Plan" by "deducting imputed deposits plus interest" from their pensions, and, therefore, they are entitled, pursuant to "ERISA § 502(a)(1)(B) to recover benefits due to them under the terms of the Plan document."[7] FAC, ¶¶ 32-33. This Court previously granted summary judgment in favor of Defendants on all of Plaintiffs' claims, including Count I. In reversing and remanding this Court's order granting summary judgment, the Ninth Circuit held that:

> The district court correctly held that Northrop's 2003 and 2005 SPDs incorporated the "historical" Litton SPDs by reference. The 2003 SPD informed participants that,

---

[7] A *de novo* standard of review applies to Plaintiffs' non-statutory benefit claim in Count I. "[T]he de novo standard of review normally applies when a court reviews a claim that the plan administrator improperly denied benefits under § 502(a)(1)(B) of ERISA." *McDaniel v. Chevron Corp.*, 203 F.3d 1099, 1107 (9th Cir. 2000). While an abuse of discretion standard can apply "when a pension plan confers discretionary authority on a plan administrator to construe the terms of a pension plan and to determine benefit eligibility," Defendants have failed to cite any evidence that the plan administrator in this case was granted the requisite discretionary authority. *Id.*

during the 5-year transition period, "you earn benefits under the historical plan in effect for you" and that the "specific rules and provisions for each [historical] plan . . . are provided in the summary plan description (SPD) for that plan." As a result, [Plaintiffs] had **adequate notice** that Northrop would calculate Part B of their transition benefit according to the rules of Litton Retirement Plan B. See 29 U.S.C. § 1022(a).

The district court erred in ruling that Litton's 1998 SPD explained the annuity equivalent offset in such a way as to inform [Plaintiffs] that Northrop would apply the offset to Part B of their transition benefit. See 29 C.F.R. § 2520.102-3(l) (SPDs must include "a statement clearly identifying circumstances which may result in . . . offset [or] reduction . . . of any benefits that a participant or beneficiary might otherwise reasonably expect the plan to provide"). Unlike Litton's 1988 SPD (and contrary to counsel's assertion at oral argument), the 1998 SPD indicated that the offset applied only to participants accepting lump-sum distributions for their FSSP Retirement accounts. According to the 1998 SPD, the offset was not applicable to participants' pensions in the absence of a lump-sum distribution. Because the 1998 SPD described the offset as applying only to a subset of participants, the 1988 SPD's description of the offset as applying to all participants is irrelevant in terms of **[Plaintiffs'] expectations** regarding Part B of the transition benefit. Thus, [Plaintiffs] had **insufficient notice** that Northrop would apply the offset to their transition benefits. See 29 C.F.R. § 2520.102-3(l).

*Skinner v. Northrop Grumman Retirement Plan B*, 334 Fed. Appx. 58, 2009 WL 1416725, *1 (9th Cir. May 21, 2009) (emphasis added). The Ninth Circuit concluded:

On remand, the district court should reconsider each of [Plaintiffs'] claims in light of our conclusion that (1) the 2003 SPD's incorporation of the 1998 SPD by reference **did not notify [Plaintiffs]** that the annuity equivalent offset would apply to their transition benefits, and (2) in terms of **[Plaintiffs'] expectations** for Part B of the transition benefit, the 1998 SPD's description of the offset's limited applicability controls over the 2003 Restatement's description of the offset as universally applicable.

*Id.* (emphasis added).

In Plaintiffs' Motion for Partial Summary Judgment and Defendants' Motion for Summary Judgment, the parties have diametrically opposed positions on whether or not Plaintiffs are required to demonstrate reasonable reliance on the SPDs, and particularly the 1998 SPD, in order to prevail on Count I. Plaintiffs argue that the Ninth Circuit clearly held that liability has been determined in their favor, and that this Court should simply enter judgment in favor of Plaintiffs and all other proposed class members. Defendants acknowledge that the Ninth Circuit held that there was a defect in Litton's 1998 SPD, but argue that Plaintiffs must still demonstrate that they reasonably relied on the defective SPD in order to recover on their claim for breach of the terms of the Plan. In support of their argument, Defendants rely on the case law of this and other circuits, and conclude that if the Ninth Circuit had determined that reasonable reliance was not an essential element of Plaintiffs' claim, it would have simply reversed and instructed this Court to enter judgment for Plaintiffs.

The Ninth Circuit did not find the conflict between the 1998 SPD and the other plan documents to be case (or even Count I) dispositive. As Defendants argue, the fact that the Ninth Circuit instructed this Court to consider each of Plaintiffs' claims in light of its determination as to the correct interpretation of various Northrop and Litton plans requires further analysis of the Plaintiffs' claims, which must necessarily include Plaintiffs' reasonable reliance on the 1998 SPD. Moreover, despite Plaintiffs' arguments to the contrary, it is far from clear that the reason the Ninth Circuit omitted any direct discussion of the reasonable reliance requirement was the result of its conclusion that no such requirement exists under its case law. In fact, it is not surprising that the Ninth Circuit did not directly address the reliance issue – but, rather, remanded to this Court with instructions to examine Plaintiffs' "expectations" – because it was reviewing this Court's order granting summary judgment, which was limited to its interpretation of the various Northrop Plan B and Litton Plan B documents and did not mention the issue of reliance.[8]

Although the Ninth Circuit has not directly decided whether reasonable reliance on a defective SPD is required in order to recover under its terms[9], three district courts in this Circuit – including one decision affirmed by the Ninth Circuit – have held that reasonable reliance is required in order to recover for a claim based on a defective SPD. For example, in *Adams*, which was affirmed by the Ninth Circuit, the district court found "that reasonable reliance is necessary before a plaintiff can recover under an SPD that conflicts with a [plan document]." *Adams v. J.C. Penney*, 865 F.Supp. 1454, 1460 (D. Or. 1994).[10] In *Kaiser Permanente Plan v. Bertozzi*, 849 F.Supp. 692,

---

[8] This Court recognizes its obligation to follow the mandate of the Ninth Circuit, and has attempted to do so. However, after careful review of the Ninth Circuit's opinion, this Court concludes that the opinion did not address, much less resolve, the issue of the reasonable reliance requirement. Because the resolution of this issue is dispositive to the pending motions, this Court must necessarily decide this issue.

[9] *See, e.g.,* Prof. Michael A. Valenza, *Accuracy is Not a Lot to Ask*, Transactions: The Tenn. Journ. Of Bus. Law, Vol. 6, pp. 361, 390 (Spring 2005) ("The Ninth Circuit has not specifically addressed reliance and prejudice with respect to conflicting SPDs and Plan Documents."). Plaintiffs acknowledge that *Bergt v. Ret. Plan for Pilots*, 293 F.3d 1139 (9th Cir 2002) – the main case upon which they rely for their argument that they do not need to demonstrate reasonable reliance – contains "no explicit discussion of reliance." Motion, 19:2. In fact, the only mention of reliance in *Bergt* seems to indicate that a plaintiff's reliance is necessary. *Id.* at 1145 (noting that an employee "should be entitled to rely on" the plan document). The other Ninth Circuit cases relied on by Plaintiffs, *Carter v. Hewlett Packard Co. Income Prot. Plan*, 302 Fed. Appx. 752 (9th Cir. 2008) and *Banuelos v. Constr. Laborers' Trust Funds for So. Cal.*, 382 F.3d 897 (9th Cir. 2004), do not address the requirement of reasonable reliance and involved situations where there was no dispute over whether the plaintiffs had knowledge of the relevant documents. In addition, these cases are factually distinguishable because, unlike this case, *Bergt* involved a conflict between a plan master document and an SPD in which the plan master document was more favorable to the employee than the SPD, and *Banuelos* involved a conflict between two master plans (not an SPD).

[10] Although the Ninth Circuit affirmed the district court in *Adams* based on its determination that the SPD did not contradict the policy, if there was any question that a showing of reasonable reliance was not required when an SPD conflicted with a plan document, it had the opportunity to address that issue. *See, Adams v. J.C. Penney*, 83 F.3d 426 (9th Cir. 1996)

698 (N.D. Cal. 1994), the court held that "an employee who wishes to enforce the terms of an SPD, in lieu of conflicting terms contained in the actual plan, must first prove that he or she reasonably relied on those terms."  Similarly, in *Berry v. Blue Cross*, 815 F.Supp. 359, 364-65 (W.D. Wash. 1993), the court held that "an employee must have relied on a plan summary in order to prevail in a claim based on the language of the summary."  The holdings of *Adams*, *Bertozzi*, and *Berry* requiring reasonable reliance on a defective SPD are also consistent with the long line of Ninth Circuit cases requiring reliance before allowing recovery for alleged ERISA disclosure violations. *See, e.g., Peralta v. Hispanic Bus., Inc.*, 419 F.3d 1064, 1075 (9th Cir. 2005) (substantive relief for faulty disclosure is generally not available unless the "employer actively and deliberately misleads employees to their detriment" and "negligently inadequate" disclosures are not enough); *Parker v. BankAmerica Corp.*, 50 F.3d 757, 769 (9th Cir. 1995) (holding that "because the plaintiff was not prejudiced by the failure to comply with ERISA's disclosure requirements, there was no prejudice and no substantive harm."); *Blau v. Del Monte Corp.*, 748 F.2d 1348, 1353-54 (9th Cir. 1984) (holding that there was no remedy for failure to comply with disclosure requirements unless failure to disclosure caused a "substantive harm").

      Moreover, the majority of the circuits that have considered this issue require either a showing of reasonable reliance or a more stringent showing of prejudice.  *See, e.g., Mauser v. Raytheon*, 239 F.3d 51, 59 (1st Cir. 2001) (holding that where an SPD failed to provide proper notice, "relief is only appropriate if the participant demonstrates significant or reasonable reliance on the [SPD]"); *Wilkins v. Mason Tenders Pension Fund*, 445 F.3d 572, 585 (2nd Cir. 2006) (holding that a deficient SPD is not sufficient and that the plaintiff must demonstrate prejudice); *Siltner v. Beretta*, 74 F.3d 1473, 1478 (4th Cir. 1996) (holding that to secure relief based on SPD that is inconsistent with other plan documents, claimant must demonstrate reliance or prejudice); *Health Cost Controls v. Washington*, 187 F.3d 703, 711 (7th Cir. 1999) (holding that the more detailed plan controls over the conflicting SPD unless the claimant has reasonably relied on the SPD to his detriment); *Koons v. Aventis Pharmaceuticals*, 367 F.3d 768, 775 (8th Cir. 2004) (holding that if the SPD conflicts with other plan documents, a participant must show that he relied on or was prejudiced by the SPD's description); *Chiles v. Ceridian Corp.*, 95 F.3d 1505, 1519 (10th Cir. 1996) (holding that simply demonstrating that the SPD is inconsistent with the plan does not entitle plaintiffs to the benefits they seek; to secure relief, the claimant must demonstrate some significant reliance on the SPD); *Branch v. G. Bernd Co.*, 955 F.2d 1574, 1579 (11th Cir. 1992) (holding that to prevent an employer from enforcing the terms of a plan that are inconsistent with those of an SPD, the participant must prove justifiable reliance on the SPD).

      As a result, this Court concludes, in the absence of controlling Ninth Circuit precedent directly on point, that Plaintiffs must demonstrate reasonable reliance on the 1998 SPD in order to prevail on their claim, and the Ninth Circuit's opinion in this case did not eliminate  Plaintiffs' burden to demonstrate reliance.

      To hold that reasonable reliance is not required would, in effect, impose strict liability on employers for a defective SPD.  However, as the Ninth Circuit has clearly explained, judgments that "create an actuarial and funding nightmare" by providing "an unintended . . . windfall" to participants "cannot be the result envisioned by Congress" under ERISA.  *Bance v. Alaska Carpenters Retirement Plan*, 829 F.2d 820, 825 (9th Cir. 1987); *see, also, Harms v. Cavenham Forest Indus.*, 984 F.2d 686, 693 (5th Cir. 1993) (holding that windfalls based on alleged technical errors are "a result abhorred by ERISA"); *Mathews v. Sears Pen. Plan*, 144 F.3d 461, 469 (7th Cir. 1998) ("we

cannot see how ERISA beneficiaries or anyone else within the protective sweep of the statute would be benefitted by the adoption of principles of contractual interpretation so rigid . . . as to permit the class to reap" windfalls).  In addition, this Court's conclusion regarding the reasonable reliance requirement is consistent with other courts in this Circuit that have repeatedly warned against imposing strict liability for defective SPDs.  *See, e.g., Berry*, 815 F.Supp. At 364-65 (rejecting the "'strict liability' that would . . . result [from] enforcing plan summaries against employers absent a showing of detrimental reliance"); *Bertozzi*, 849 F.Supp. at 698 (holding that there is no "strict[ ] liab[ility] for the deficiencies in [an] SPD.").  As one court recently explained, the most likely outcome if errors in SPDs are strictly enforced against employers will be that those employers will be deterred from offering plans at all.  *Young v. Verizon's Bell Atlantic Cash Balance Plan*, — F.Supp. 2d —, 2009 WL 3677350, *46 (N.D. Ill. Nov. 2, 2009) ("Congress did not desire to create a system that would result in high administrative and litigation costs that could potentially discourage employers from offering plans. . . .  If errors in plan drafting are to be strictly enforced so as to create a windfall to participants at the unanticipated expense of the plan, it could presumably act as a deterrent to employers from establishing such plans.") (*citing Varity Corp. v. Howe*, 516 U.S. 489, 497 (1996)); *see, also, Sprague v. GMC*, 133 F.3d 388, 403 (6th cir. 1998) ("creat[ing] disincentives for employers to offer benefits . . . is not in the interests of employees generally, and it is certainly not compatible with the goals of ERISA.").  Therefore, requiring reasonable reliance before a participant can recover greater benefits than the plan sponsor intended based on a defective SPD fosters the balance Congress sought to achieve between protecting participants and maintaining incentives for employers to offer benefit plans.

In this case, Plaintiffs not only have failed to demonstrate that they relied on the 1998 SPD, but the evidence conclusively demonstrates that they did not.  Plaintiffs' only effort at demonstrating reasonable reliance is their argument that they remained employed at Northrop longer than they otherwise would have.  However, this is plainly insufficient.  To demonstrate reasonable reliance on a faulty SPD, a plaintiff must "prove that he . . . did or did not take action resulting in forfeiture of the very benefit sought" based on the SPD.  *Adams*, 865 F.Supp. at 1461 (plaintiff must demonstrate that he "fail[ed] to make a timely election or los[t] a benefit due to defendants' failure to inform plaintiff of her rights under the [plan]."). A plaintiff can demonstrate reasonable reliance where he "could have taken no action to obtain or forfeit that benefit" because "either [the plaintiff] was or was not eligible for [the benefit] . . . under the [plan]." *Id.*  However, there is no evidence that Plaintiffs lost any benefit by continuing their employment with Northrop.  Moreover, it is undisputed that both Plaintiffs knew prior to their retirements that the transition benefit would include an offset.  In addition to multiple communications, including the May 2003 Section 204(h) notice, sent to Plaintiffs prior to their retirements that informed them of the offset, Plaintiffs reviewed PowerPoint presentations from the Town Hall meetings conducted by representatives of the Northrop Benefits Center that clearly explained the transition benefit, including the application of the offset.  Plaintiffs also studied multiple versions of estimated pension calculations prepared specifically for them prior to their respective retirements, and each of those estimates clearly reflected the offset.  In fact, Skinner testified at his deposition that following his review of his December 2004 pension estimate he called the Northrop Benefits Center to confirm his understanding of the application of the offset to his benefits and he admits that he was correctly advised how the offset would be applied.  Accordingly, Defendants' Motion for Summary Judgment is **GRANTED** with respect to Count I and Plaintiffs' Motion for Partial Summary Judgment with respect to Count I is **DENIED**.

    **B.**    **Defendants Are Entitled to Summary Judgment with Respect to Count II**

**Because Section 204(g) Only Applies to Plan Amendments, and the December 2005 SMM Is Not A Plan Amendment.**

In Count II of the FAC, Plaintiffs allege that Defendants "retroactively altered the Plan, and retroactively reduced benefits" because they "reduced benefits already vested in participants and beneficiaries."[11]  Benefits that have already been accrued are governed by ERISA § 204(g)(1), which states: "[t]he accrued benefit of a participant under a plan may not be decreased by an amendment of the plan." In *Gillis v. SPX Corp. Individual Account Retirement Plan*, 511 F.3d 58 (1st Cir. 2007), the First Circuit affirmed the district court finding that the already accrued benefits of the plaintiff were not reduced in violation of ERISA § 204(g)(1).  In *Gillis*, after SPX acquired GPX, the GPX retirement plan was merged with the SPX retirement plan. *Id.* at 59.  The SPX retirement plan converted the value of the employee's already-accrued benefit under the previous GPX pension plan, including any early retirement subsidies earned under the GPX plan, into an opening account balance and then added principal and interest to that account balance as it accrued during the course of their employment. *Id.*  The First Circuit affirmed the district court's finding that because the SPX retirement plan preserved the plaintiff's previously-accrued early retirement subsidy, the SPX retirement plan did not violate ERISA's anti-cutback rules under section 204(g)(1). *Id.* at 62; *see, also, Gillis v. SPX Corporation Individual Retirement Plan*, 2007 WL 1031656 (D.Mass. Mar. 31, 2007).

This case is similar to *Gillis*.  The Northrop Plan B, which became effective July 1, 2003, expressly *preserved* the benefits earned before that date; Part A of the new formula constitutes the benefit the participant had earned under Litton Plan B through June 30, 2003.  The transition benefit formula (*i.e.*, the greater of Part B or Part C) was designed to determine benefits on a *prospective* basis only, beginning July 1, 2003.  In fact, it is undisputed that Plaintiffs are not challenging the calculation of their Part A benefit (*i.e.*, the accrued benefit before July 1, 2003).  Accordingly, Defendants did not retroactively reduce Plaintiffs' benefits.

In their current Motion for Partial Summary Judgment, Plaintiffs argue that the are entitled to judgment on Count II because "the December 2005 SMM operated as a plan amendment that retroactively reduced transition benefits accrued by Participants before January 1, 2006."  However, an ERISA plan can only be amended pursuant to the procedures set forth in the plan documents, and not by an SMM. *Curtis-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 82 (1995); *see, also,*

---

[11] Counts II through V are statutory ERISA claims, subject to *de novo* review.  As the Court explained in *Allen v. Honeywell Retirement Earnings Plan*, 382 F.Supp. 2d 1139 (D.Ariz. 2005):

> "Interpretation of ERISA, a federal statute, is a question of law subject to *de novo* review." *Spain v. Aetna Life Ins. Co.*, 13 F.3d 310, 312 (9th Cir.1993). As with Plaintiffs' other statutory claims, the Court conducts a *de novo* review to determine whether the plan administrator properly found no violation of ERISA. *See McDaniel v. Chevron Corp.*, 203 F.3d 1099, (9th Cir. 2000) ("[W]e cannot defer to a plan administrator's construction of a federal statute ...."); *Penn v. Howe-Baker Eng'rs, Inc.*, 898 F.2d 1096, 1100 (5th Cir.1990) ("We accord no deference to the [plan administrator's] conclusions as to the controlling law, which involve statutory interpretation.")

*Winterrowd v. American General Annuity Ins. Co.*, 321 F.3d 933 (9th Cir. 2003) (holding that once an amendment procedure is set forth in a benefit plan, it "constrain[s] the employer from amending the plan by other means."). An SMM simply summarizes material plan changes, but does not amend plan documents. 29 U.S.C. § 1024(b).

In addition, Article 17 of Northrop Plan B requires that any amendment must be adopted pursuant to a resolution of the Northrop Board of Directors or Defendant Administrative Committee of Northrop Grumman Retirement Plan B. The December 2005 SMM does not purport to serve as an amendment and neither the Northrop Board of Directors or Defendant Administrative Committee of Northrop Grumman Retirement Plan B ever adopted the December 2005 SMM as an amendment. *Curtis-Wright Corp.*, 514 U.S. at 82 (holding that ERISA plan may only be amended in conformity with the amendment procedures set forth in the master plan document). Because the December 2005 SMM cannot act as an amendment to Northrop Plan B, Plaintiffs' ERISA § 204(g)(1) claim fails. Accordingly, Defendants' Motion for Summary Judgment is **GRANTED** with respect to Count II and Plaintiffs' Motion for Partial Summary Judgment with respect to Count II is **DENIED**.

### C. Defendants Are Entitled to Summary Judgment with Respect to Count IV Because Defendants Did Not Breach Any Alleged Fiduciary Duties.

In Count IV of the FAC, Plaintiffs allege that they are entitled to recover pension benefits pursuant to ERISA § 502(a)(2) for Defendants' alleged breaches of their fiduciary duties. However, Defendant Northrop Plan B is not a fiduciary and, therefore, cannot be sued for breach of fiduciary duty. *See, Local 159 v. Nor-Cal Plumbing*, 185 F.3d 978, 982 (9th Cir. 1999) (ERISA plans cannot be fiduciaries); *Brennan v. Consolidated Rail Corp. Matched Savings Plan*, 2000 WL 217664, *3 (E.D. Pa. Feb. 11, 2000) ("[a]s a matter of law, the Plan is not a fiduciary, owes no fiduciary duty to a participant, and cannot be sued for a breach of fiduciary duty"). In fact, Plaintiffs undoubtedly recognized this when they previously attempted to dismiss Defendant Northrop Plan B from Count IV of their FAC. Accordingly, Defendants' Motion for Summary Judgment is **GRANTED** with respect to Defendant Northrop Plan B on Count IV.

Similarly, Plaintiffs also cannot prevail in their Section 502(a)(2) claim against Defendant Administrative Committee of Northrop Grumman Retirement Plan B. To the extent Plaintiffs' Count IV raises issues related to the amendment of Northrop Plan B, including how transition benefits are calculated, Defendant Administrative Committee of Northrop Grumman Retirement Plan B acted as a settlor, not a fiduciary. *Hughes Aircraft Co. v. Jacobson,* 525 U.S. 432, 444 (1999) (a plan's settlor's duties including making "a decision regarding the form or structure of the Plan such as who is entitled to receive Plan benefits and in what amounts, or how such benefits are calculated). As the Supreme Court stated in *Hughes Aircraft Co.*, 525 U.S. at 444:

> In general, an employer's decision to amend a pension plan concerns the composition or design of the plan itself and does not implicate the employer's fiduciary duties which consist of such actions as the administration of the plan's assets.

As a result, Plaintiffs cannot prevail on a breach of fiduciary duty claim against Defendant Administrative Committee of Northrop Grumman Retirement Plan B for issues related to the amendment of Northrop Plan B. *Id.* ("[p]lan sponsors who alter the terms of a plan do not fall into

the category of fiduciaries."). Moreover, Plaintiffs have failed to demonstrate – or produce any evidence supporting -- that Defendant Administrative Committee of Northrop Grumman Retirement Plan B intentionally misled Plaintiffs. *Anweiler v. American Elec. Power Service Corp.*, 3 F.3d 986, 991 (7th Cir. 1993). Accordingly, Defendants' Motion for Summary Judgment is **GRANTED** with respect to Defendant Administrative Committee of Northrop Grumman Retirement Plan B on Count IV.

### D. Defendants Are Entitled to Summary Judgment with Respect to Counts III and V.

In Count III of the FAC, Plaintiffs allege that Defendants did not distribute a Summary Plan Description or Summary of Material Modifications regarding the transition benefit deductions prior to December 2005. Plaintiffs further allege that previous SPDs or SMMs that were distributed were inadequate because they did not address deductions with respect to transition benefits. In Count V of the FAC, Plaintiffs allege that the December 2005 SMM was a "purported amendment to the Plan" and that it "significantly reduced the rate of future benefit accrual" for Plaintiffs, and this amendment to the Plan violated ERISA § 204(h) because no notice was given within 15 days of the amendment. In their Opposition, Plaintiffs fail to respond to Defendants' arguments regarding these claims in their Motion for Summary Judgment, and, thus, have conceded that Defendants' are entitled to summary judgment on these claims. *Calence, LLC v. Dimension Data Holdings*, 2007 WL 1526349, *7 (W.D. Wash. May 23, 2007) (holding that where plaintiff did not respond arguments made by defendant in its motion for summary judgment regarding a particular claim, plaintiff had conceded that defendant was entitled to summary judgment on that claim). Again, Plaintiffs undoubtedly recognized the futility of these claims when they previously attempted to dismiss Counts III and V from their FAC. Accordingly, Defendants' Motion for Summary Judgment is **GRANTED** with respect to Counts III and V.

## IV. Conclusion

For all the foregoing reasons, Defendants' Motion for Summary Judgment is **GRANTED** and Plaintiffs' Motion for Partial Summary Judgment is **DENIED**. In addition, Plaintiffs' Renewed Motion for Class Certification is **DENIED as moot**.

IT IS SO ORDERED.